NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHERYL EDWARDS and JON EDWARDS, | |
| Plaintiffs, | Civ. No. 20-2086 |
| v. | **OPINION** |
| MICHIGAN STATE UNIVERSITY and JOHN DOES 1-10, | |
| Defendants. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss or, in the Alternative, to Transfer filed by Defendant Michigan State University ("Michigan State"). (ECF No. 8.) Plaintiffs Cheryl Edwards and Jon Edwards (collectively, "Plaintiffs") oppose. (ECF No. 9.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant Michigan State's Motion (ECF No. 8) is granted in part and denied in part.

## BACKGROUND

**I.    Factual Background**

This case arises out of alleged sexual harassment by former employees of Defendant Michigan State. (*See* Compl. ¶¶ 39–61, ECF No. 1.) In 1976, Plaintiff Cheryl Edwards was pursuing an African Studies minor as an undergraduate student at Michigan State. (*Id.* ¶ 40.)

1

Several times throughout her studies, Mrs. Edwards met with Professor Harold G. Marcus, a history professor at Michigan State from 1968 to 2003. (*Id.* ¶¶ 26, 44.) During one meeting in Professor Marcus' office, Marcus allegedly closed the door behind Mrs. Edwards, "grabbed [her], kissed her, groped her and exposed his genitals while pushing her against a wall." (*Id.* ¶ 46.) He told her, "I really want to have sex with you." (*Id.*) Mrs. Edwards told Marcus "no" and left his office. (*Id.* ¶ 48.)

After this incident, Professor Marcus called Mrs. Edwards several times and requested that she have sex with him. (*Id.* ¶ 50.) Mrs. Edwards worried that her grades might be negatively affected if she did not have sex with Marcus, but she "continued [to] rebuff[ ] his advances." (*Id.* ¶ 51.) Her interactions with Marcus caused her to suffer anxiety and panic attacks. (*Id.*)

Jon Edwards was a Ph.D. candidate in African History at the time. (*Id.* ¶¶ 1, 63.) Mr. Edwards was required to attend office hours with Professor Marcus once a month. (*Id.* ¶ 65.) The first time the two men met, Marcus asked Mr. Edwards, "[H]ow is your sex life?" (*Id.* ¶ 64.) During nearly every meeting, Marcus would ask Mr. Edwards about his dating life and tell Mr. Edwards about his own "conquests." (*Id.* ¶ 65.) At one of Marcus' regularly hosted parties for his students, Marcus allegedly bragged to Mr. Edwards about his sexual interactions with one of Mr. Edwards' friends. (*Id.* ¶ 69.) Mr. Edwards did not report Marcus's behavior to other faculty members in the department because he worried about the consequences of doing so. (*Id.* ¶ 66.)

Plaintiffs met at one of Professor Marcus' parties and began a relationship. (*Id.* ¶¶ 52, 71.) Marcus began directing comments to Mrs. Edwards, including "I hope [Mr. Edwards] is satisfying you" and "I hope he's better than we would have been together." (*Id.* ¶ 53.) After Plaintiffs were married in 1980, they conducted field work in Europe for approximately one and a half years. (*Id.* ¶ 54.) Professor Marcus continued to serve as Mr. Edwards' advisor during that

time. (*Id.*) On one occasion, Marcus appeared at the Public Record Office in London and said to Mrs. Edwards, "I guess I don't have to ask you how your sex life is anymore." (*Id.* ¶ 55.)

When Plaintiffs returned to Michigan State's campus in 1984, Mrs. Edwards began working in the library with Richard Chapin, Michigan State's Director of Libraries at the time. (*Id.* ¶ 56.) Dr. Chapin, who passed away in 2009, allegedly showed Mrs. Edwards centerfolds of pornographic magazines, asked her and other female staff members if they had seen the "new edition for the month," and "inquir[ed] whether they had tried certain sexual positions with their significant others." (*Id.* ¶ 57.) When Mrs. Edwards reported Dr. Chapin's behavior, her supervisor advised her not to "bring this up again" "if she wanted to keep her job." (*Id.* ¶ 58.)

Eventually, Professor Marcus denied Mr. Edwards his Ph.D. (*Id.* ¶ 107.) Mr. Edwards' Ph.D. was subsequently awarded in August 2019 and backdated to June 1988. (*Id.*)

Plaintiffs filed a complaint with Defendant Michigan State in February 2018. (*Id.* ¶ 82.) Defendant Michigan State's Office of Institutional Equity ("OIE") retained the services of Kroll Associates, Inc. ("Kroll") to investigate Plaintiffs' complaint. (*Id.* ¶¶ 82–85.) In June 2019, Kroll concluded that Marcus violated Michigan State policies. (*Id.* ¶ 86.)

Plaintiffs note that "[t]he events giving rise to this lawsuit occurred in Ingham County, Michigan and Eaton County, Michigan[,] both of which sit in the Southern Division of the Western District of Michigan." (*Id.* ¶ 23.) Nevertheless, Plaintiffs allege that this lawsuit is properly brought in the District of New Jersey because it is "the judicial district in which the injuries resulting from the misconduct have been suffered by Plaintiffs." (*Id.* ¶ 24.)

## II.     Procedural History

Plaintiffs filed the Complaint in this Court on February 29, 2020. (ECF No. 1.) Plaintiffs allege nine counts: (1) violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §

3

1681(a) *et seq.*, as to Plaintiff Cheryl Edwards (*id.* ¶¶ 87–104); (2) violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) *et seq.*, as to Jon Edwards (*id.* ¶¶ 105–07); (3) violations of the Fourteenth Amendment under 42 U.S.C. § 1983 for failure to investigate and report (*id.* ¶¶ 108–16); (4) violations of the Fourteenth Amendment under 42 U.S.C. § 1983 for failure to train and supervise (*id.* ¶¶ 117–21); (5) sexual assault and battery of Plaintiff Cheryl Edwards (*id.* ¶¶ 122–26); (6) violations of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* (*id.* ¶¶ 127–39); (7) gross negligence in violation of Mich. Comp. Laws § 600.1407(2)(c) (*id.* ¶¶ 140–44); (8) Plaintiff Jon Edwards' loss of consortium, society, and services (*id.* ¶¶ 145–47); and (9) Plaintiff Cheryl Edwards' loss of consortium, society, and services (*id.* ¶¶ 148–50). Defendant Michigan State is the only defendant identified in the Complaint. (*Id.* at 1.)[1] Plaintiffs seek compensatory and punitive damages. (*See id.* at 24–25.)

On June 12, 2020, Defendant Michigan State filed a Motion to Dismiss or, in the Alternative, to Transfer. (ECF No. 8.) Plaintiffs filed an Opposition (ECF No. 9), and Defendant Michigan State filed a Reply (ECF No. 10). Defendant Michigan State's Motion is presently before the Court.

## LEGAL STANDARD

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the uttermost limits permitted by the United States Constitution." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990). Therefore, for a New Jersey court to exercise

---

[1] The page number to which the Court refers is the CM/ECF page number.

jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted). There are two types of personal jurisdiction: general and specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). "General jurisdiction is based upon the defendant's 'continuous and systematic' contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (citation omitted). "[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities." *Id.*

When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007); *see also Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 (3d Cir. 1992)) (noting that the plaintiff bears the burden to demonstrate that personal jurisdiction is proper by a preponderance of the evidence). Where the court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller*, 384 F.3d at 97. Nevertheless, "[t]o meet [its] burden, [the plaintiff] must 'establish[ ] jurisdictional facts through sworn affidavits or other competent evidence.'" *Cerciello*, 563 F. App'x at 925 n.1 (quoting *Miller*, 384 F.3d at 101 n.6). "In other words, 'bare pleadings alone' are insufficient to withstand a motion to dismiss for lack of personal jurisdiction." *Id.* (quoting *Miller*, 384 F.3d at 101 n.6).

**DISCUSSION**

**I.      General Personal Jurisdiction**

A court may exercise general personal jurisdiction over a defendant whose affiliations with the state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear*, 564 U.S. at 924. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137. "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19).

Defendant Michigan State is organized under Michigan law (Compl. ¶ 27), and its principal place of business is in East Lansing, Michigan (Haas Decl. ¶ 6, ECF No. 8-2). Defendant Michigan State is not incorporated, registered, or licensed to do business in New Jersey. (*Id.* ¶ 7.) Therefore, Michigan, not New Jersey, is the paradigmatic forum in which Defendant Michigan State is subject to general personal jurisdiction.

Defendant Michigan State concedes that it has some contacts with New Jersey. (*See* Def.'s Br. at 8, ECF No. 8-1.) This semester, approximately 0.5% of Michigan State's students are from New Jersey. (Haas Decl. ¶ 8.) In the ninety days preceding June 10, 2020, approximately 1.6% of impressions of Defendant Michigan State's digital advertisements were served in New Jersey. (*Id.* ¶ 10.) Two of Defendant Michigan State's more than 42,000

6

employees require New Jersey employer withholding. (*Id.* ¶ 9.)

These contacts, however, are insufficient to confer general jurisdiction upon this Court. Although "[a]dvanced educational institutions typically draw their student body from numerous states," accepting this fact as a basis for general jurisdiction "would subject [Defendant Michigan State] to suit on non-forum related claims in every state where a member of the student body resides." *See Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985). Moreover, "the fact that [Defendant Michigan State] engages in advertising or promotion that reaches New Jersey residents does not itself subject [it] to general jurisdiction." *See Watiti v. Walden Univ.*, 2008 WL 2280932, at *6 (D.N.J. May 30, 2008) (citing *Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 156 (D.N.J. 1990)). "Any nationally prominent university would engage in these types of activities with numerous institutions in any number of states[,] . . . [but] these activities do no[t] suggest a specific targeting of the forum state . . . ." *See Isaacs v. Trs. of Dartmouth Coll.*, 2014 WL 4186536, at *12 (E.D. Pa. Aug. 25, 2014); *see also Pop Test Cortisol, LLC v. Univ. of Chi.*, 2015 WL 3822237, at *3 (D.N.J. June 18, 2015) (collecting cases standing for the proposition "that a district court does not have general jurisdiction over a non-resident university based on typical university-type activities in a forum, such as fundraising and recruiting"). Therefore, this Court does not have general jurisdiction over Defendant Michigan State.

**II.     Specific Personal Jurisdiction**

      A.     *Traditional Minimum Contacts Test*

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of*

*Cal.*, 137 S. Ct. 1773, 1781 (2017) (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). Generally, "[t]he inquiry as to whether specific jurisdiction exists has three parts." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have purposefully directed [its] activities at the forum. . . . Second, the litigation must arise out of or relate to at least one of those activities. . . . And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (citations and internal quotations omitted).

To establish that a defendant "purposefully directed [its] activities" toward the forum state, the lawsuit "must arise out of contacts that the 'defendant *himself*' creates with the forum," *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), not merely out of "defendant's contacts with persons who reside [in the forum]," *id.* at 285 (citing *Int'l Shoe*, 326 U.S. at 319). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.*; *see also O'Connor*, 496 F.3d at 317 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (noting that "the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient").

B.   *Effects Test*

"A slightly refined version of this test applies to intentional tort claims." *O'Connor*, 496 F.3d at 317 n.2 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). In *Calder*, the Supreme Court recognized that a court may have personal jurisdiction over a non-resident defendant that commits an intentional tort where the effect of the tort is "felt" primarily within the forum state. 465 U.S. at 789–90. *Calder* applies where (1) "[t]he defendant committed an intentional tort"; (2) "[t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) "[t]he

8

defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Marten*, 499 F.3d at 297 (quoting *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)). This is known as the "effects test." *Id.*

    C.    *Application*

Plaintiffs allege that this action was properly brought in New Jersey because Plaintiffs have suffered injuries here. (Compl. ¶ 24.) This allegation does not establish specific jurisdiction under the traditional minimum contacts standard. Plaintiffs concede that "[t]he events giving rise to this lawsuit occurred in Ingham County, Michigan and Eaton County, Michigan." (*Id.* ¶ 23.) Plaintiffs' relocation to New Jersey sometime after the alleged misconduct is the kind of unilateral activity that cannot serve as a valid basis for specific personal jurisdiction. *See Walden*, 571 U.S. at 286 (explaining that the requisite contacts must reflect a defendant's "own affiliation with the State, not . . . the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State").

Plaintiffs' argument is also unavailing under the effects test. "Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements." *Marten*, 499 F.3d at 297 (citation omitted). "To establish that the defendant 'expressly aimed' [its] conduct, the plaintiff has to demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Id.* at 297–98 (quoting *IMO Indus.*, 155 F.3d at 266). Plaintiffs have not satisfied their burden of demonstrating that Defendant Michigan State expressly aimed its alleged conduct toward New Jersey. *See Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010) (explaining that "knowledge of where an individual resides . . . is insufficient to establish jurisdiction"); *Marten*, 499 F.3d at 298 (citing

9

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)) (explaining that "the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants"); *IMO Indus.*, 155 F.3d at 266 (explaining that, although "knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, . . . it alone is insufficient to satisfy the targeting prong of the effects test"). Therefore, the Court concludes that it does not have personal jurisdiction over Defendant Michigan State.[2]

### III.    Transfer to Proper Venue

When a district court concludes that it lacks personal jurisdiction or venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a); *Kloth v. S. Christian Univ.*, 320 F. App'x 113, 118 (3d Cir. 2008) (citing *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007)) (explaining that "a District Court's conclusion that there is no personal jurisdiction does not preclude its authority to transfer the case for venue reasons"). "Dismissal is considered to be a harsh remedy . . . and transfer of venue to another district court in which the action could originally have been brought . . . is the preferred remedy." *Doe v. Archdiocese of Phila.*, 2020 WL 3410917, at *5 (D.N.J. June 22, 2020) (quoting *NCR Credit Corp. v. Ye Seekers Horizon*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998)).

Under the venue statute, a civil action may be brought in, among other venues, "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," or "a judicial district in which a substantial part of the events or omissions

---

[2] Because the Court has concluded that it lacks personal jurisdiction, the Court will not address Defendant Michigan State's arguments regarding sovereign immunity and the applicable statutes of limitations. (*See* Def.'s Br. at 16–22, ECF No. 8-1.)

giving rise to the claim occurred." 28 U.S.C. §§ 1391(b)(1)–(2). Defendant Michigan State is organized under Michigan law (Compl. ¶ 27), its principal place of business is in the Western District of Michigan, (*see* Haas Decl. ¶ 6), and Plaintiffs concede that "[t]he events giving rise to this lawsuit occurred in Ingham County, Michigan and Eaton County, Michigan[,] both of which sit in the Southern Division of the Western District of Michigan" (Compl. ¶ 23). The Court concludes that venue is proper in the Western District of Michigan under 28 U.S.C. §§ 1391(b)(1)–(2). Accordingly, in lieu of dismissal, the Court will transfer this matter to the U.S. District Court for the Western District of Michigan.

## **CONCLUSION**

For the foregoing reasons, Defendant Michigan State's Motion to Dismiss or, in the Alternative, to Transfer (ECF No. 8) is granted in part and denied in part. The Court will transfer this matter to the U.S. District Court for the Western District of Michigan. An appropriate Order will follow.


Date: <u>October 29, 2020</u>                                            */s/ Anne E. Thompson*
                                                                               ANNE E. THOMPSON, U.S.D.J.